IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 04-cv-01849-MSK-OES

CAVITAT MEDICAL TECHNOLOGIES, INC.,

    Plaintiff and Counterclaim Defendant,

v.

AETNA, INC.,

    Defendant and Counterclaimant.

---

AETNA, INC.

    Third-Party Plaintiff,

v.

ROBERT J. JONES,

    Third-Party Defendant.

---

## ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS/THIRD-PARTY CLAIMS, AND DENYING MOTIONS TO STRIKE AND TO BIFURCATE, AS MOOT

    THIS MATTER comes before the Court on the following motions filed by the Plaintiff and Third-Party Defendant: (1) a Motion to Dismiss First Amended Counterclaims **(#171, #179)**; (2) a Motion to Strike First Amended Counterclaims **(#167, #178)**; and (3) a Motion to Bifurcate Trial or, Alternatively, to Reset Trial Date **(#201)**. Having considered these motions, as well as the responses and reply **(#182, #189, #191, #192, #194, #220)**, the Court

**FINDS** and **CONCLUDES** that:

## I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## II. Procedural and Factual Background

The Plaintiff, Cavitat Medical Technologies, Inc. ("Cavitat MT"), manufactures and markets the Cavitat, a sonar bone imaging instrument. Third-Party Defendant Robert J. Jones ("Mr. Jones") is the co-inventor of the Cavitat and is the President, CEO and shareholder of Cavitat MT. Defendant AETNA, Inc. ("Aetna") is an insurance company which provides medical and dental insurance.

Cavitat MT asserts two claims for relief against Aetna for disparagement and tortious interference with a prospective business relationship or contract. These claims are premised upon Aetna's alleged publication and dissemination of a Clinical Policy Bulletin which categorically denies insurance coverage for the diagnosis and treatment of neuralgia inducing cavitational osteonecrosis ("NICO") and for the use of the Cavitat, as an experimental treatment.

Aetna filed counterclaims/third-party claims **(#83)** against Cavitat MT and Mr. Jones. After Cavitat MT and Mr. Jones moved to dismiss **(#92)** such claims under Fed. R. Civ. P. 12(b)(6) and 9(b), Aetna filed amended counterclaims/third-party claims **(#114)** for the purpose of curing any pleading defects. **(*See* #157, #158)**. Aetna now asserts these claims: (1) violation of the Colorado Consumer Protection Act; (2) fraud; (3) civil conspiracy; and (4) a right to attorney fees.

Aetna alleges that Cavitat MT, Mr. Jones, and others improperly use the Cavitat to treat non-dental conditions through teeth extraction and other dental work. It alleges that Cavitat MT,

its representatives, and Mr. Jones have made false representations to practitioners in promoting the sale and use of the Cavitat at Cavitat-sponsored conferences, have advised patients concerning medical care, and have encouraged practitioners to submit insurance claims for use of the Cavitat and pathology analysis. It alleges that it has been harmed because it has paid insurance claims for use of the Cavitat and treatment of NICO that should not have been paid.

In this regard, Aetna alleges that certain practitioners, aided and abetted by Cavitat MT and Mr. Jones, "have utilized various means to defraud Aetna by misrepresenting, concealing or otherwise mischaracterizing the services rendered to patients for the purpose of obtaining payment for non-covered services." In specific, Aetna claims that at conferences, Cavitat MT:

> had its speakers preach the value of charging the patient cash "up front" for surgery and diagnosis followed by the submission of claims for dental services sometimes disguised as medical codes on a fee-for-service basis. Cavitat [MT] offered "assistance" on how to create invoices that disguised that the diagnosis, surgery and treatment was for NICO and also furnished boilerplate operative notes to induce the patient to apply for reimbursements from the payor that Cavitat [MT] and the speakers knew or should have known were not reimbursable services. . . .

It further alleges that Cavitat MT and Mr. Jones have taught practitioners how to use inapplicable billing codes when submitting insurance claims for NICO-related treatment or oral surgery performed to treat non-dental illnesses. It identifies seventeen practitioners who, "on information and belief," have engaged in improper billing and treatment practices. It also provides a list of claims for non-covered services which it has paid.

### III.  Issues Presented

Should Aetna's counterclaims/third-party claims be dismissed? It not, should the counterclaims/third-party claims be stricken? If not, should the trial of such claims be bifurcated

from the trial of Cavitat MT's claims against Aetna?

## IV.  Analysis

Cavitat MT and Mr. Jones move to dismiss the counterclaims/third-party claims pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).  Under Rule 12(b)(6), a party may move to dismiss a claim for relief on the basis that it fails to state any claims upon which relief may be granted.  There is a strong presumption against the dismissal of claims under this rule.  *See Cottrell, Ltd. v. Biotrol Intern., Inc.,* 191 F.3d 1248, 1251 (10th Cir. 1999).  The Court accepts all well-pleaded allegations as true and construes them in the light most favorable to Aetna.  *See Williams v. Meese,* 926 F.2d 994, 997 (10th Cir. 1991).  Only if Aetna can allege no set of facts in support of its claims is dismissal appropriate.  *See Jojola v. Chavez,* 55 F.3d 488, 490 (10th Cir. 1995).

Pursuant to Fed. R. Civ. P. 9(b), certain fraud allegations must be pled with particularity.  The purpose of this heightened pleading requirement is to give notice of the factual basis for the claims asserted.  *See Koch v. Koch Industries, Inc.,* 203 F.3d 1202, 1236 (10th Cir. 2000).  To satisfy this requirement, a party must allege the time, place, and substance of the fraudulent conduct, the identity of the person engaging in such conduct, and the consequences of such conduct.  *See id.*   However, a party is not required to plead intent, knowledge, or state of mind with particularity.  *See Schwartz v. Celestial Seasonings, Inc.,* 124 F.3d 1246, 1252 (10th Cir. 1997).

**A. Standing**

As a preliminary matter, the Court concerns itself with the scope of Aetna's standing to assert the counter and third party claims. The question of standing presents a threshold jurisdictional issue, therefore the Court raises it *sua sponte.  See Rector v. City and County of*

*Denver*, 348 F.3d 935, 942 (10th Cir. 2003).

The standing issue has both constitutional and prudential components. *See id.* For a party to have constitutional standing, there must be: (1) an injury to the party's legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal relationship between the injury and the challenged conduct; and (3) a likelihood that the injury will be redressed by a favorable decision. *See id.* A party has prudential standing if: (1) the party asserts its own rights, not those of third parties; (2) the party's claim is not a general grievance shared equally and generally by all or a large class of citizens; and (3) the party's injury is within the zone of interests the statute or common law claim intends to protect. *See Board of County Comm'rs v. Geringer,* 297 F.3d 1108, 1112 (10th Cir. 2002).

Here, Aetna alleges a single type of injury – that it has paid insurance claims for treatment of NICO or for treatment involving use of the Cavitat device which it contends that it was not contractually obligated to pay. Therefore, Aetna's standing is limited to claims addressing conduct by Cavitat MT or Mr. Jones that allegedly caused Aetna to pay such claims. With these general standing principles in mind, the Court turns to the asserted counterclaims/third-party claims.

**B. Colorado Consumer Protection Act Claim**

Pursuant to the Colorado Consumer Protection Act ("CCPA"), § 6-1-113(1), C.R.S., certain persons may assert civil claims "against any person who has engaged in or caused another to engage in any deceptive trade practice" listed in the article. The four categories of persons who may assert claims are: (1) an actual or potential consumer of a defendant's goods, services or property; (2) a residential subscriber who receives an unlawful telephone solicitation; (3) a

successor in interest to a consumer who purchased a defendant's goods, services or property; and (4) "any person," including a nonconsumer, who in the course of such person's business or occupation, is injured by a deceptive trade practice. *See* § 6-1-113(1)(a), (b) & (c), C.R.S. *Cf. Hall v. Walter*, 969 P.2d 224, 231-35 (Colo. 1998).

In addition, under the CCPA, a plaintiff cannot sue for a "purely private wrong" which does not impact the public. *See Martinez v. Lewis*, 969 P.2d 213, 222 (Colo. 1998). If alleged deceptive trade practices occur only within the context of a private agreement and do not impact the public, then the CCPA provides no remedy. *See id.*

Consistent with these principles, a CCPA claim requires that the same alleged deceptive trade practice impact the public and harm the person asserting the claim. The elements of a CCPA claim are: (1) a defendant engaged in, or caused another person to engage in, an unfair or deceptive trade practice as set forth in § 6-1-105, C.R.S.; (2) the challenged practice occurred in the course of the defendant's business; (3) the challenged practice significantly impacts the public, as actual or potential consumers of the defendant's goods, services, or property; (4) the plaintiff suffered injury in fact to a legally protected interest; and (5) the challenged practice caused the plaintiff's injury. *See Rector v. City and County of Denver*, 122 P.3d 1010, 1016-17 (Colo. App. 2005); *Hoang v. Arbess,* 80 P.3d 863, 870 (Colo. App. 2003). Such a claim must be pled with particularity pursuant to Fed. R. Civ. P. 9(b). *See Duran v. Clover Club Foods Co.*, 616 F. Supp. 790 (D. Colo. 1985).

Aetna is not a consumer, nor a successor to a consumer, of Cavitat MT's or Mr. Jones' goods, services or property. Aetna is not a residential subscriber who received an unlawful telephone solicitation. It would appear that the only basis for Aetna to have standing to pursue a

CCPA claim is if a deceptive trade practice that impacted the public also caused it to pay insurance claims.

The counterclaims/third-party claims contain two types of alleged deceptive trade practices by Cavitat MT and Jones. The first pertain to representations made to practitioners and patients regarding the benefits of using the Cavitat device and treatment of NICO with the Cavitat device. Aetna does not allege these representations caused Aetna's injury.

The second type of allegedly deceptive trade practice were purported recommendations by seminar speakers about coding or timing of submission of insurance claims for services to treat NICO or for use of the Cavitat technology. Aetna contends that it paid claims, for which it had no contractual obligation, as a result of these recommendations.

At first blush, it would appear that Aetna seeks to address a "private wrong" arising out of its contracts with providers or patients for insurance coverage. It was the providers or patients who submitted the claims. If the claims were improperly coded or contained improper information, this might give rise to a breach of contract action against the party who submitted the claim, but Aetna would have no standing to seek relief under the CCPA.

The complicating factor in this case, however, is that Aetna asserts that the submission of the claims was induced by the recommendations of seminar speakers. It is not clear whether a recommendation to submit an insurance claim would be a deceptive trade practice under the CCPA, nor whether the alleged recommendations were made by an authorized agent of Cavitat MT or Mr. Jones. For purposes of this motion, construing the facts most favorably to Aetna, the Court will assume that both allegations are correct. This does not, however, give Aetna standing to sue under the CCPA. Even if the recommendations as to the submission of insurance claims

are deceptive trade practices and cause Aetna's injury, they are not the same alleged deceptive trade practices that Aetna contends impacted the public. Therefore, the Court dismisses Aetna's CCPA claim for lack of standing.

**C. Fraud Claim**

Aetna's fraud claim alleges direct fraud by Cavitat MT and/or Mr. Jones. The direct fraud claim is premised upon two theories: false representation and fraudulent concealment. Under Colorado law, to state a false representation claim, Aetna must allege: (1) Cavitat MT and Mr. Jones falsely represented a material fact to Aetna; (2) they knew the the representation was false; (3) Aetna was ignorant of its falsity; (4) the representation was made with the intention that Aetna act on it; and (5) the representation resulted in damage to Aetna. *See Ballow v. Phico Ins. Co.*, 875 P.2d 1354, 1361 (Colo. 1993). Similarly, to state a claim for fraudulent concealment, Aetna must allege: (1) Cavitat MT and Mr. Jones concealed a material existing fact from Aetna that in equity and good conscience should have been disclosed; (2) they knew the fact was being concealed; (3) Aetna was ignorant of the concealment; (4) Cavitat MT and Mr. Jones intended that Aetna act upon the concealment; and (5) such concealment resulted in damages to Aetna. *See id.*

Aetna's allegations are insufficient to establish the elements of either type of fraud. Aetna alleges that Cavitat MT, its representatives, and Mr. Jones made false statements, or failed to disclose material facts, about the Cavitat device and NICO to practitioners, providers and patients. However, there is no allegation that Cavitat MT or Mr. Jones made such statements to Aetna or that Cavitat MT or Mr. Jones failed to disclose any facts to Aetna. In addition, there are no allegations of Aetna's reasonable reliance upon any statement or omission made by Cavitat

MT or Mr. Jones. The Court recognizes that Aetna contends that Cavitat MT's agents encouraged practitioners and patients to make representations on claims, but this is insufficient to state a claim of direct fraud. Therefore, the Court dismisses Aetna's direct fraud claim pursuant to Fed. R. Civ. P. 12(b)(6).

**D.  Civil Conspiracy Claim**

To state a claim for civil conspiracy, Aetna must allege: (1) two or more persons; (2) shared an object to be accomplished; (3) had a meeting of the minds on the object or course of action; (4) committed an unlawful overt act, such as fraud; and (5) this caused Aetna to sustain damages. *See Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995). According to Aetna, element 3 is premised upon the CCPA and fraud claims.

Civil conspiracy is often called a derivative cause of action. *See Double Oak Const., L.L.C. v. Cornerstone Dvpt. Int'l, L.L.C.,* 97 P.3d 140, 146 (Colo. App. 2003). This is because it incorporates other causes of action in element 4. If there can be no showing that there was an unlawful act to satisfy the fourth element, then there can be no civil conspiracy claim. "If the acts alleged to constitute the underlying wrong provide no cause of action, then there is no cause of action for the conspiracy itself." *See id.* Because the Court has dismissed Aetna's CCPA claim for lack of standing, such claim cannot be used to support the civil conspiracy claim.

The analysis of the civil conspiracy claim based upon fraud differs. The Court dismissed the direct fraud claim because Aetna does not allege that either Cavitat MT or Mr. Jones directly made false statements to Aetna, or concealed information from Aetna, upon which Aetna reasonably relied. Instead, Aetna alleges that non-parties engaged in such conduct at the recommendation of an agent of Cavitat MT or Mr. Jones. The civil conspiracy claim reflects the

9

alleged linkage between the persons who submitted the insurance claims with Cavitat MT or Mr. Jones.

However, because the alleged unlawful act is fraud, such fraud must be pled with particularity. Aetna alleges that Cavitat MT's "speakers" advised practitioners at Cavitat-sponsored conferences how to code insurance claims for submission and how to draft invoices to disguise what treatment was provided. It also alleges that Cavitat MT's "speakers" provided "boilerplate operative notes to induce the patient to apply for reimbursements from the payor that Cavitat [MT] and the speakers knew or should have known were not reimbursable services." It also identifies seventeen practitioners who Aetna believes engaged in improper billing and treatment practices, as well as a list of claims it contends it paid for non-covered services.

These allegations are not sufficiently particularized to plead the fraud component of the civil conspiracy claim. Aetna does not identify the speakers, the statements made, when the statements were made, or to whom they were made. There is no specific identification of any alleged misrepresentation on any particular insurance claim nor any allegations linking a particular statement made by a speaker to any particular insurance claim.

In the ordinary case, the Court would grant Aetna leave to amend to make more specific allegations. However, this case has been pending for more than 16 months and Aetna has already had one opportunity to so amend. It's efforts resulted in the amended counterclaims/third-party claims which the Court now considers. The discovery period in the case ends within days and at no time has Aetna offered additional facts or sought the opportunity to do so. Thus the Court must conclude that the facts alleged in the amended counterclaims/third-party claims are as specific as Aetna can make them.

Because trial is set to commence in less than five months and the discovery and dispositive motion deadlines are February 1 and March 1, 2006, respectively, further opportunity to amend the counterclaims and third-party claims would undoubtedly delay the prompt administration of this case. Therefore, the Court dismisses the civil conspiracy claim pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).

**E.  Claim for Attorney Fees**

Cavitat MT and Mr. Jones argue that there can be no separate cause of action for attorney fees. The Court agrees that a request for attorney fees is not a free standing claim; it is, instead, one type of relief that can be granted if a party prevails on a claim. Therefore, there is no claim to dismiss.

**F.  Motion to Strike**

Cavitat MT and Mr. Jones move to strike the counterclaims/third-party claims. In light of their dismissal, the motion to strike is denied, as moot.

**G. Motion to Bifurcate or to Reset Trial**

Cavitat MT and Mr. Jones ask the Court to either bifurcate the trial of the claims and counterclaims/third-party claims, or to continue the trial so that they can adequately prepare to defend against the counterclaims/third-party claims. In light of the dismissal of the counterclaims/third-party claims, this motion is denied, as moot.

**IT IS THEREFORE ORDERED** that:

(1)  The motion to dismiss  **(#171, #179)** is **GRANTED**. Aetna's counterclaims/third-party claims are dismissed.

(2)  The motion to strike **(#167, #178)** and the motion to bifurcate or reset the trial

    **(#201)** are **DENIED**, as moot.

(3) The caption shall be amended to delete reference to Mr. Jones and any counterclaims.

Dated this 27th day of January, 2006

           **BY THE COURT:**

           *Marcia S. Krieger*
           _____
           Marcia S. Krieger
           United States District Judge